# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| AINSLEY TOZIER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 1:16-cv-00540-NT |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a hairdresser, server, kitchen helper, sales associate, and stock clerk and, in the alternative, performing other work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that, in assessing her residual functional capacity ("RFC"), the ALJ erroneously omitted any limitations attributable to fibromyalgia or carpal tunnel syndrome ("CTS"). *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-13. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 14, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2016, Finding 1, Record at 11; that she had a severe impairment of degenerative disc disease of the lumbar spine, Finding 3, *id*. at 12; that she retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except that she could frequently stoop and climb stairs, ramps, ropes, ladders, and scaffolds, Finding 5, *id*. at 16; that she was capable of performing past relevant work as a hairdresser, server, kitchen helper, sales associate, and stock clerk, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 19-20; in the alternative, considering her age (36 years old, defined as a younger individual, on her amended alleged disability onset date, September 30, 2013),[2] education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id*. at 20-21; and that she, therefore, was not disabled from September 30, 2013, through the date of the decision, October 21, 2015, Finding 7, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

---

[2] The ALJ mistakenly calculated the plaintiff's age as 35 as of her amended alleged disability onset date. *See* Record at 20. Nothing turns on the error, which I have corrected.

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 and, in the alternative, Step 5 of the sequential evaluation process. At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

At Step 5 of the sequential evaluation process, the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the

individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff argues that the ALJ's RFC determination is the product of multiple errors: (i) findings that she had no medically determinable impairment of fibromyalgia or severe impairment of CTS, (ii) the improper rejection of the physical RFC opinion of treating physician John Garofalo, M.D., primarily because he included limitations stemming from those impairments, (iii) the erroneous rejection of a vocational assessment by treating rehabilitation psychologist Richard Thomas, Ph.D., and (iv) misplaced reliance on the opinions of agency nonexamining consultants Donald Trumbull, M.D., and Richard T. Chamberlin, M.D. *See* Statement of Errors at 4-13. For the reasons that follow, I find no error meriting remand.

### A. Finding of No Medically Determinable Fibromyalgia Impairment

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2016) ("SSR 96-7p"), at 133; *see also* 20 C.F.R. §§ 404.1508, 416.908.

"It is the plaintiff's burden to produce sufficient evidence to allow the commissioner to reach a conclusion at Step 2; the absence of evidence provides support for a conclusion adverse to the plaintiff at this point in the sequential evaluation process." *Coffin v. Astrue*, Civil No. 09-487-P-S, 2010 WL 3952865, at *2 (D. Me. Oct. 6, 2010) (rec. dec., *aff'd* Oct. 27, 2010).

4

Social Security Ruling 12-2p ("SSR 12-2p"), which pertains to fibromyalgia, provides, in relevant part:

> Generally, a person can establish that he or she has an MDI [medically determinable impairment] of FM [fibromyalgia] by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone.
>
> ***
>
> . . . We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. [setting forth the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia] or section II.B. [setting forth the 2010 ACR Preliminary Diagnostic Criteria], and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.

SSR 12-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016), at 461-62 (footnote omitted).

The 1990 criteria require a showing of (i) "[a] history of widespread pain . . . that has persisted (or that persisted) for at least 3 months[,]" (ii) "[a]t least 11 positive tender points on physical examination" that "must be found bilaterally (on the left and right sides of the body) and both above and below the waist" in 18 specified tender point sites, and (iii) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id*. at 462-63. The 2010 criteria require a showing of (i) "[a] history of widespread pain[,]" (ii) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome[,]" and (iii) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded[.]" *Id*. at 463 (footnotes omitted).

The ALJ found no medically determinable fibromyalgia impairment, explaining:

> The record contains several references to the diagnosis of fibromyalgia. However, the extensive medical record contains no evidence showing that the [plaintiff] exhibits the symptoms associated with this impairment. Specifically, the record does not confirm that [she] has the requisite number and location of tender trigger point findings and there is no evidence that medical doctors have excluded other impairments as required in [SSR] 12-2p. Tender bilateral elbows, medial knees, trochanters scapulae and sternum were noted on examination performed in October of 2012, eleven months prior to the amended alleged onset date. However, that limited description does not satisfy the requirements described in [SSR] 12-2p. Treatment notes covering the period since the alleged onset date do not describe findings consistent with the requirements of [SSR] 12-2p. Thus, this diagnosis does not comport with the requirements set forth in either [SSR] 12-2p or 96-4p that requires that an "impairment" must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.

Record at 12 (citations omitted). The ALJ also gave great weight to the findings of Drs. Trumbull and Chamberlin "that there was no examination confirming fibromyalgia by the requisite criteria." *Id*.; *see also id*. at 60, 84.

In her statement of errors, the plaintiff contended that the ALJ erred in finding that neither the 1990 nor the 2010 criteria were satisfied, *see* Statement of Errors at 4-6; however, at oral argument, her counsel withdrew her argument concerning the 1990 criteria. As concerns the third 2010 criterion, the plaintiff argues that "no physician has suggested that the various conditions are due entirely to some other condition or conditions as opposed to [her] fibromyalgia." *Id*. at 6. However, as the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 15) at 6, "[t]his is not the standard." Instead, SSR 12-2p requires "[e]vidence" of the rule-out of other disorders. SSR 12-2p at 463. The plaintiff identifies no evidence that Dr. Garofalo excluded or even tested for other disorders when he diagnosed fibromyalgia.[3]

---

[3] At oral argument, the plaintiff's counsel correctly noted that there is an x-ray ruling out arthritis – a July 2, 2014, x-ray finding no arthritis of the plaintiff's wrist. *See* Record at 496. However, the x-ray was neither ordered by Dr. Garofalo nor taken to rule out alternate causes of the plaintiff's fibromyalgia symptoms. Rather, it was obtained after

6

Beyond this, the plaintiff identifies no evidence unseen by Drs. Trumbull or Chamberlin that might have called into question their conclusion that there was "no exam confirming FMS by ACR/CDC criteria" and "insufficient exams to determine if [the plaintiff] has myofascial pain." Record at 60, 84.

The ALJ's finding that the plaintiff had no medically determinable fibromyalgia impairment, hence, is supported by substantial evidence.[4]

### B. Finding of No Severe CTS Impairment

The ALJ stated that she found the plaintiff's medically determinable CTS impairment nonsevere, explaining:

> Phalen test was noted to be positive in an assessment from April of 2014 and a treatment note from July of 2015. Tinel sign was noted to be positive in an assessment from April of 2014, but was "not impressive" on examination performed in July of 2015. Electrodiagnostic testing performed in June of 2015 revealed abnormal findings consistent with bilateral [CTS]. Right-sided findings were only "mild to moderate" in severity, and left-sided findings were "quite mild." The [plaintiff] underwent right carpal tunnel release surgery in August of 2015. In a post-operative treatment note[] from August of 2015, it was noted that [she] was doing well. [She] reported no discomfort and no paresthesias. Light touch sensation in the radial, ulnar and median nerve distributions was within normal limits, distal perfusion was normal, and the [plaintiff] moved her fingers well.

*Id*. at 13 (citations omitted). *See also id*. at 18.[5]

---

the plaintiff presented to the Redington-Fairview General Hospital complaining of a dog bite to her right forearm. *See id*. at 494-96. In any event, the plaintiff does not explain, nor is it apparent, how a rule-out of arthritis in one wrist excludes other disorders that could cause fibromyalgia symptoms.

[4] This obviates the need to consider the commissioner's alternative argument with respect to the 2010 criteria: that the plaintiff failed to demonstrate that she met the second criterion, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. *See* Opposition at 6-8.

[5] A "Tinel sign" is "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve." Stedman's Medical Dictionary ("Stedman's") 1640 (27th ed. 2000). A "Phalen maneuver" is a maneuver "in which the wrist is maintained in volar flexion; paresthesia occurring in the distribution of the median nerve within 60 sec[onds] may be indicative of carpal tunnel syndrome." *Id.* at 1061. "Paresthesia" is "[a]n abnormal sensation, such as of burning, pricking, tickling, or tingling." *Id.* at 1316.

The April 2014 assessment to which the ALJ referred was Dr. Garofalo's April 28, 2014, Medical Source Statement of Ability To Do Work-Related Activities (Physical). *See id.* at 503-06. Dr. Garofalo attributed both the exertional and manipulative limitations that he assessed in part to the plaintiff's CTS. *See id.* at 504-05. He indicated, *inter alia*, that the plaintiff could reach, handle, finger, and feel for less than two and a half hours a day because of "numbness and tingling of hands [and] fingers secondary to carpal tunnel bilaterally and fibromyalgia[.]" *Id.* at 505.

The ALJ gave "little weight" to the Garofalo opinion, explaining, in relevant part:

> Dr. Garofalo cited to the [plaintiff's] subjective complaints of pain, [CTS] and fibromyalgia to support the limitations he assessed. However, as previously discussed, the evidence of record does not support the [plaintiff's] allegations with regard to the severity of her pain. [She] was consistently in no acute distress on numerous examinations. . . . Electrodiagnostic testing revealed only "mild to moderate" right-sided abnormalities and "quite mild" left-sided abnormalities. . . . While Dr. Garofalo indicated that fibromyalgia affected the [plaintiff's] functional abilities, for the reasons previously discussed, the evidence of record does not support a finding that fibromyalgia is a medically determinable impairment.

*Id.* at 19 (citations omitted).

The plaintiff complains that the ALJ's handling of her CTS "borders on disingenuous[,]" arguing that, in view of Dr. Garofalo's "undisputed expert opinion" corroborating the condition's severity and "actual records demonstrating that the expert orthopedic surgeon, Dr. Collette, concluded the condition was severe enough to justify surgery[,]" the ALJ erred as a matter of law in failing to find the condition severe or adopt the handling/fingering limitations found by Dr. Garofalo. Statement of Errors at 8 (citations omitted). She notes that the vocational expert present at her hearing testified that those handling/fingering limitations, alone, would have eliminated all jobs. *See id.* at 13; Record at 48-49. She points out that the opinions of Drs. Trumbull and Chamberlin cannot stand as substantial evidence of the nonseverity of her CTS because they did not purport to assess the condition, which arose subsequent to the issuance of their opinions. *See* Statement of Errors at 10-11.

8

This point of error presents a closer question; however, I am persuaded that the ALJ's finding of a nonsevere CTS condition is supported by substantial evidence.

The commissioner cites, *inter alia*, *Small v. Colvin*, No. 2:14-cv-042-NT, 2015 WL 860856 (D. Me. Feb. 27, 2015), *see* Opposition at 10-11, in which this court rejected an argument similar to that made here, see *Small*, 2015 WL 860856, at *1 (claimant contended that the ALJ had "erroneously judged his right upper extremity impairment nonsevere, rejecting the only expert opinion of record bearing on the impairment, that of treating physician James Katz, M.D., and failing to factor resulting limitations into his determination of the [claimant's RFC]").

In *Small*, the court was unpersuaded that the ALJ was required to obtain the assistance of a medical expert to assess the severity of the arm/hand condition. *See id*. at *7 (noting that caselaw cited by claimant for the proposition that the ALJ erred as a matter of law in concluding that his arm/hand impairment was nonsevere absent reliance on expert opinion was distinguishable because it pertained to the assessment at Step 4 of a claimant's RFC). It determined that the ALJ had identified substantial evidence in support of his nonseverity determination, including evidence that the claimant had failed to seek treatment, engaged in activities reflective of greater arm/hand capacity than alleged, and made statements casting doubt on the credibility of his allegations of disabling limitations. *See id*. at *7-*8.

*Small*, however, did not concern CTS or a need for surgery: the claimant had sustained an injury to his right ulnar nerve for which he had already undergone surgical repair. *See id*. at *2-*3. At oral argument, the plaintiff's counsel contended that the ALJ had misread the meaning of the nomenclature "mild" and "moderate" as concerns CTS, noting that his client's condition was sufficiently severe to warrant CTS release surgery. While this point is well-taken, I conclude that the ALJ reached a supportable conclusion that the plaintiff did not have a severe CTS impairment

meeting the so-called "duration requirement." *See* Record at 13; 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); *id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) ("At the second step [of the sequential evaluation process], we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§§ 404.1509 or 416.909], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

The plaintiff did not allege either in her initial applications for SSD and SSI benefits or on reconsideration that she had CTS, *see* Record at 53, 76, and she stated on February 24, 2012, when she requested reconsideration, that she had no new evidence to submit, *see id*. at 108. At oral argument, her counsel suggested that she may have first alluded to CTS symptoms as early as February 6, 2013, when she complained of pain in her arms as well as her shoulders, and again on August 19, 2013, when she complained of a diffuse numbness in her arms that came and went. *See id*. at 325, 380. However, he conceded that it was not clear that the condition of which she then complained was CTS. That is unlikely. As counsel for the commissioner countered, CTS is associated with the hand/wrist rather than the arm. *See* Stedman's at 1749 (defining CTS as "characterized by nocturnal hand paresthesia and pain, and sometimes sensory loss and wasting in the median hand distribution; . . . caused by chronic entrapment of the median nerve at the wrist, within the carpal tunnel").

From what appears in the record, the plaintiff first raised the issue of CTS on February 19, 2014, during an outpatient consultation for fibromyalgia and lumbar back pain with Peter G. Arabadjis, M.D. *See* Record at 465-66. She told Dr. Arabadjis that she had been "unable to work

10

due to her shoulder pain and hand pain" and that she had undergone electrodiagnostic studies about four years earlier that showed mild bilateral CTS. *Id*. at 466. Those studies are not of record. Dr. Arabadjis did note that, on light touch, the plaintiff "had subjective decreased sensation over her fourth and fifth fingers." *Id*. at 467. However, he did not diagnose CTS or otherwise address that condition. *See id*.

The next mention of CTS or CTS symptoms in the record is in Dr. Garofalo's April 28, 2014, medical source statement, in which he assessed limitations flowing from CTS. *See id*. at 504-05. Yet, there is no indication that the plaintiff sought treatment for the condition until June 12, 2015, when she underwent electrodiagnostic testing by Peter J. Keebler, M.D., that confirmed findings consistent with CTS. *See id*. at 596. Dr. Keebler noted that the right-sided findings were "mild to moderate[,] showing significant right median sensory conduction delay across the wrist with evidence of median sensory axonal loss and/or conduction block[,]" and the left-sided findings were "quite mild[,] showing only differential slowing of left median sensory conduction across the wrist without evidence of median motor conduction delay or median sensory/motor axonal loss or conduction block." *Id*.

On July 24, 2015, the plaintiff presented to orthopedic surgeon Vaughn M. Collett, M.D., "with [a] complaint of bilateral hand numbness and burning pain that has been going on for a number of years in fact." *Id*. at 591. On physical examination, Dr. Collett found that the plaintiff was "able to actively flex and extend as well as abduct and adduct the digits and thumbs" and that "[t]wo-point discrimination [was] diminished in the right median nerve distribution[,]" "Tinel's tests over the carpal tunnels [were] not impressive[,]" "Phalen's tests [were] positive[,]" and "[w]rist range of motion [was] well-tolerated." *Id*. at 593. Dr. Collett recommended open carpal tunnel release surgery on the right side, which was "certainly the more symptomatic of the 2." *Id*.

11

The plaintiff underwent that procedure on August 27, 2015. *See id*. at 588-59. On August 31, 2015, she reported to Dr. Collett that she was "doing very well[,]" had "no discomfort[,]" and "no longer [had] any paresthesias, a definite change from before surgery." *Id*. at 586.

Had the ALJ credited the plaintiff's allegations, she could have found that the plaintiff suffered from a medically determinable CTS impairment for at least 12 months and that the impairment was severe. However, on this record, she was not compelled to do so. She found the plaintiff not entirely credible, *see id.* at 17, a finding that the plaintiff does not separately challenge, *see generally* Statement of Errors. She supportably concluded that the plaintiff, who did not allege to the commissioner as of February 24, 2014, that she had CTS or hand pain issues, did not seek treatment for CTS or obtain a diagnosis of record of that condition until June 2015, and then underwent surgery that appeared to have alleviated the CTS symptoms in her right hand as of August 2015, fell short of demonstrating that she had a severe CTS impairment that met the duration requirement.[6]

### C. Evaluation of Opinion Evidence

#### 1. Garofalo Opinion

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and

---

[6] This case is materially distinguishable from *Gerry v. Berryhill*, No. 1:16-cv-00351-DBH, 2017 WL 2894126 (D. Me. July 7, 2017) (rec. dec., *aff'd* July 25, 2017), issued subsequent to oral argument, in which this court vacated a decision and remanded a case based on an ALJ's failure to find a claimant's CTS severe and impermissible layperson's analysis of the raw medical evidence in determining her RFC. *See Gerry*, 2017 WL 2894126, at *1. In *Gerry*, unlike this case, the ALJ ignored the claimant's CTS at Step 2 but then went on at Step 4, without benefit of expert assistance, to deem the condition nondisabling. *See id*. at *2, *4-*6. In addition, whereas, in this case, there is scant evidence of complaints about or treatment for CTS-related pain, the record in *Gerry* documented the claimant's persistent search for relief from CTS-related hand pain and functional limitations, including transferring her care to another doctor after her condition was twice misdiagnosed. *See id*. at *3-*4.

laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[7] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-8p"), at 150 (an ALJ can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The plaintiff's challenge to the ALJ's rejection of the Garofalo opinion hinges on the success of her points that the ALJ erred in handling her fibromyalgia and CTS impairments. She contends that the primary reasons supplied by the ALJ for according the Garofalo opinion little weight were not good ones: that Dr. Garofalo included limitations flowing from fibromyalgia and CTS. *See* Statement of Errors at 9-10. Yet, because the ALJ supportably deemed the plaintiff's fibromyalgia not to be a medically determinable impairment and her CTS not to have been severe, her rejection of the Garofalo assessment on those bases passes muster.

---

[7] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

13

## 2. Thomas Assessment

The plaintiff next complains that the ALJ failed to provide good reasons for rejecting a detailed three-page vocational assessment by her treating rehabilitation psychologist, Dr. Thomas, who, like Dr. Garofalo, considered the combined effects of all of her limitations. *See* Statement of Errors at 10. The ALJ did not treat Dr. Thomas's assessment report (Exhibit 51F) as an expert opinion but, rather, cited to findings within it, for example, Dr. Thomas's findings on mental status examination, when discussing the record evidence generally. *See* Record at 14-15, 577-79. This was understandable. As the commissioner argues, *see* Opposition at 12-14, the report reflects the provision of career advice following the administration of a mental status examination and a career assessment inventory test, *see* Record at 577-79, containing nothing that could be deemed a "medical opinion," that is, an opinion containing statements "that reflect judgments about the nature and severity of [a claimant's] impairment(s)[,]" 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

In summarizing his conclusions, Dr. Thomas did state that the plaintiff did "not appear to be able to work on a consistent basis as a hairdresser, due in part to her psychiatric condition, which cause[d] her to become overwhelmed and to lose her temper too easily to work currently as a hairdresser[,]" and, "more importantly," due in part to the fact that "she note[d] that her pain conditions would prevent her from working steadily for any meaningful length of time." Record at 578. To the extent that this equivocal statement, which appears to be based on the plaintiff's subjective allegations insofar as it concerns her physical impairments, constitutes Dr. Thomas's "opinion," it is not a "medical opinion." Instead, it is an opinion bearing on the ultimate question of disability, an issue reserved to the commissioner with respect to which even the opinions of treating sources are given no "special significance[.]" 20 C.F.R. §§ 404.1527(d)(1) & (3), 416.927(d)(1) & (3).

In any event, as the commissioner argues, *see* Opposition at 14, it is not clear that the Thomas report would support a finding of disability or is necessarily inconsistent with the ALJ's Step 4 and 5 findings. Dr. Thomas noted that the plaintiff planned to undergo carpal tunnel surgery, suggesting that if the surgery was successful, she might be able to return to her job as a hairdresser. *See* Record at 578. He also recommended that the plaintiff consider pursuing training to become a medical assistant, commenting that "hopefully she could work in this field regardless of whether her chronic pain conditions improve or not." *Id.*

Assuming, *dubitante*, that the Thomas report contained a treating physician opinion that the ALJ was obliged to address, any error in failing to do so was harmless.

### 3. Trumbull and Chamberlin Opinions

The plaintiff finally contends that the ALJ's reliance on the Trumbull and Chamberlin opinions was misplaced in that they failed to include limitations resulting from her fibromyalgia, and their opinions predated her assertion that she suffered from CTS, rendering them materially incomplete. *See* Statement of Errors at 10-12; *see also, e.g., Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) ("[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge.") (citations omitted).

The ALJ's reliance on the Trumbull and Chamberlin opinions was not misplaced. As discussed above, she did not err in finding that the plaintiff had no medically determinable fibromyalgia impairment. As also discussed above, she did not err in deeming the plaintiff's CTS

nonsevere. Therefore, the fact that Drs. Trumbull and Chamberlin did not consider that impairment did not render their opinions as to the plaintiff's functional limitations materially incomplete.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of August, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge